1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                         DISTRICT OF NEVADA
8                                * * *

9   STACIE PETERSON,                    Case No. 3:13-cv-00097-MMD-VPC

10                      Plaintiff,
11      v.                                          ORDER

12  AMERICAN FIDELITY ASSURANCE        (Plf.'s Motion to Remand – dkt. no. 14
    COMPANY, et al.,                    Defs.' Motion to Dismiss – dkt. no. 15
13                                       Defs.' Motion for Leave to File Excess
                        Defendants.     Pages – dkt. no. 33)

14

15  **I.      SUMMARY**

16          Before the Court are Plaintiff's Motion to Remand (dkt. no. 14), and Defendants'

17  Motion to Dismiss (dkt. no. 15) and Motion for Leave to File Excess Pages (dkt. no. 33).

18  The two substantive motions require the Court to resolve the related issue of whether the

19  long term disability insurance policy in this case is governed by ERISA, which would then

20  confer federal question jurisdiction, but may preempt some or all of Plaintiff's asserted

21  state law claims. The Court determines that the policy at issue is governed by the

22  Employee Retirement Income Security Act ("ERISA") and state law claims are

23  preempted.

24  **II.     BACKGROUND**

25          **A.      Factual History**

26          Stacie Peterson brought this suit against American Fidelity Assurance Company

27  ("AFAC") and the Washoe Education Association ("WEA") for alleged wrongful conduct

28  relating to a long term disability insurance policy ("the Plan"). Plaintiff enrolled in the

Plan during her employment with the Washoe County School District ("WCSD"). Peterson alleges that AFAC sold long term disability insurance to employees of WCSD designed "to protect a WCSD teacher from income lost due to a disability that precludes a teacher from working in his/her occupation as a teacher." (Dkt. no. 1-1 at ¶¶ 5, 12.) WEA, as the recognized exclusive employee organization to negotiate benefits for WCSD, allegedly endorsed the AFAC disability insurance plan offered and sold to WCSD. (Dkt. no. 1-1 at ¶ 7.)

Peterson alleges that AFAC, with the approval and consent of WCSD and WEA, marketed its long-term disability insurance policy to WCSD employees, but designed it in such a way that would prevent any policyholders from receiving benefits. (Dkt. no. 1-1 at ¶¶ 25–30.) She specifically alleges that, since 1997, she has steadily paid higher premiums on the Plan by electing for a higher policy amount notwithstanding the fact that her Public Employee Retirement System ("PERS") benefit would cover most, if not all, of her purported disability income benefit that AFAC promised to pay, and that AFAC's share of her benefit payment would decrease as her PERS vesting increased. (Id. at ¶ 42.) As a result, she paid AFAC gradually increased premiums as she elected for greater monthly disability coverage, even though AFAC was gradually decreasing its risk of having to pay out her benefits. Peterson alleges that AFAC had a duty to sell a long term disability insurance policy that provides benefits commensurate with the premiums charged, but that AFAC misrepresented the benefits under the Plan. (Id. at ¶¶ 54-55.)

Peterson became totally disabled under the terms of the Plan as of June 11, 2011. (Id. at ¶ 50.) Peterson alleges that AFAC refused to pay Peterson $3,600 (her policy limit at the time), claiming she was entitled only to her pre-2010 $3,400 limit because the increase was attributed to a preexisting condition. (Id. at ¶ 51.) After twelve (12) months, AFAC allegedly refused to pay Peterson any of her $3,400 in monthly benefits. (Id. at ¶ 52.) Peterson's claims are based on allegations relating to the marketing and sale of the Plan, including alleged false representations and

1   concealment of the offset provision that would reduce benefits under the Plan as her
2   PERS vesting increased, and the service of her claim for disability and denial of benefits.

3   **B.    Procedural History**

4   On January 30, 2013, Peterson filed this suit in Nevada's Second Judicial District
5   Court alleging (1) breach of contract, (2) breach of the implied covenant of good faith
6   and fair dealing, (3) breach of the Nevada Unfair Claims Practices Act, NRS § 686A.310,
7   (4) deceptive trade practices, (5) fraud, (6) negligence, (7) breach of confidential
8   relationship, and (8) a single claim of negligence as to WEA. (*Id.* at ¶¶ 59-99.)

9   AFAC and WEA (collectively "Defendants") removed the suit to this Court on
10  March 1, 2013, asserting both federal question jurisdiction under ERISA and diversity
11  jurisdiction. (*See* dkt. no. 1.)

12  Peterson timely moved to remand the case on March 29, 2013, arguing that
13  ERISA does not apply to the facts of this case, and no diversity jurisdiction exists
14  because WEA's inclusion in the suit destroys complete diversity. (*See* dkt. no. 14.) On
15  the same day, Defendants moved to dismiss, or, alternatively, for summary judgment. In
16  their Motion, Defendants request that the Court affirm that the Plan is governed under
17  ERISA and dismiss state law claims that they contend are preempted. (*See* dkt. no. 15.)
18  In response to a Court order requiring additional briefing on ERISA preemption (*see* dkt.
19  no. 35), the parties filed supplemental briefs on June 8, 2013, in support of their
20  positions on AFAC's Motion (*see* dkt. nos. 37, 38).

21  **III.    LEGAL STANDARD**

22  A defendant may remove an action to federal court if the plaintiff could have
23  initially filed the complaint in federal court. 28 U.S.C. § 1441(a).  If removal was improper
24  and the federal court lacks jurisdiction, the federal court must remand the case to state
25  court.  28 U.S.C. § 1447(c). The "presence or absence of federal-question jurisdiction is
26  governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction
27  exists only when a federal question is presented on the face of the plaintiff's properly
28  pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A district

1  court analyzes jurisdiction "on the basis of the pleadings filed at the time of removal

2  without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of*

3  *Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

4  **IV.   DISCUSSION**

5     **A.   Remand**

6         Peterson argues that the Court lacks federal question jurisdiction to hear this suit

7  because the Plan is not an ERISA plan.  The Court finds that the Plan is an ERISA plan.[1]

8         "ERISA was enacted to protect, *inter alia*, "the interests of participants in

9  employee benefit plans and their beneficiaries." *Silvera v. Mutual Life Ins. Co. of N.Y.*,

10  884 F.2d 423, 425 (9th Cir. 1989) (*quoting* 29 U.S.C. § 1001(b)). ERISA governs

11  "employee welfare benefit pans" that it defines as

> any plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer or by an employee organization*, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

18  29 U.S.C. § 1002 (emphasis added).  "In order to provide the widest possible protection

19  to all such plans, ERISA contains a preemption clause which states, in relevant part, that

20  'this chapter shall supersede any and all State laws insofar as they . . . relate to any

21  employee benefit plan . . . .'" *Silvera*, 884 F.2d at 425 (*quoting* 29 U.S.C. § 1144(a)).

22  This preemption clause is to be construed broadly, *Pilot Life Ins. Co. v. Dedeaux,* 481

23  U.S. 41, 45-46 (1987), and "extends to state common-law causes of action as well as

24  regulatory laws." *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir.1985).

25  ///

26

27  _____

28  [1]Because the Court has federal question jurisdiction, the Court need not determine whether diversity jurisdiction also exists.

4

ERISA does not govern, however, employee benefit plans established or maintained by a governmental entity.   29 U.S.C. § 1003(b)(1); *see also* 29 U.S.C. § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing"). The parties dispute whether AFAC's plan is a governmental plan. "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).

The Department of Labor promulgated 29 C.F.R. § 2510.3-1(j) to clarify under what circumstances an employer or employee organization's adoption of a group insurance plan would constitute the "establishment" of the plan:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation [sic] the program is completely voluntary for employees or members;
> >
> > (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> >
> > (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j) (commonly referred to as a "safe harbor" from ERISA coverage). "[A]n employer's failure to satisfy just one requirement of the safe harbor regulation conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA." *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1151-52 (9th Cir. 2000); *see Kanne*, 867 F.2d at 492 ("A bare purchase of

insurance, without any of the above elements present, does not by itself constitute an ERISA plan (although it may be evidence of the existence of an ERISA plan)."). In addition, "[a]n employer has not established an ERISA plan if it merely advertises a group insurance plan that has none of the attributes described in 29 C.F.R. § 2510.3-1(j)." *Id.*

Peterson argues that ERISA does not govern the Plan because it was "established or maintained" by Peterson's employer, WCSD, a governmental entity under the terms of ERISA. *See* 386.010(2) (declaring county school districts to be political subdivision of the State of Nevada).  In arguing that WCSD established the Plan, Peterson points to WCSD's role in undertaking the following actions:

1. Providing salary information for use by AFAC to market the Plan;

2. Consenting to use of school property to AFAC to market the Plan;

3. Consenting to remit the premium to AFAC through payroll deductions;

4. Establishing the AFAC Policy as part of a collective bargaining agreement.[2]

Defendants respond that WCSD played no more than a "ministerial" role in creating the Plan, and its minimal involvement is not enough to transform the insurance policy into a governmental plan.  Defendants contend that the plan was established and maintained by WEA, and that WCSD contributed no money to the plan. (*See* Elaine Lancaster Decl., dkt. no. 20-1 at ¶ 2; Elaine Lancaster Decl., dkt. no. 15-7 at ¶ 10).

The Court agrees with Defendants. WCSD's involvement in the Plan does not constitute its establishment of the plan. WCSD did not make any contributions to the Plan and the Plan was not required under any collective bargaining agreement. WCSD only allowed AFAC access to salary information and physical space, and was only involved in the Plan's maintenance to the extent that it offered payroll deductions as a mechanism for participating employees. While, as Peterson argues, there can be no doubt that "but for" WCSD, the AFAC policy would not exist, that is not the operative

---

[2]Defendants contest this representation.

requirement.  Section 2510.3-1(j) expressly contemplates just the level of involvement by a government entity that WCSD performed without it being deemed to "establish or maintain" the Plan. Accordingly, Peterson's attempt to invoke the government plan exemption fails. *See, e.g.*, *Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1353 (5th Cir. 2009) (holding that letter carriers union, exclusive bargaining representative recognized by United States Postal Service, did not establish a government plan because the plan was not product of collective bargaining and was secured through separate contract with insurer).

For ERISA to apply, the only question that remains is whether WEA "established or maintained" the Plan. Defendants, in their Notice of Removal, state that the Plan "was established and maintained by WEA," and that AFAC sold its disability insurance plan "through WEA who arranged for an established ERISA plan." (Dkt. no. 1 at ¶ 10.) Peterson in her Complaint alleges that "WEA endorsed the American Fidelity long term disability income insurance that was offered to and sold to employees of the WCSD." (Dkt. no. 1-1 at ¶ 9.) Since state actions seeking to enforce rights under an ERISA plan are removable even if only state causes of actions are pled, *see Clorox v. United States District Court*, 779 F.2d 517, 521 (9th Cir. 1985), this action was properly removed because WEA established the Plan. WEA offered eligible WCSD employees disability income insurance not required under their operative collective bargaining agreement. (*See* Lancaster Decl., dkt. no. 15-7 at ¶ 5.) WEA negotiated with AFAC for the Plan, and the Plan was subsequently issued to WEA as group policyholder. WEA entered into a so-called "Endorsement Agreement" with AFAC to offer the Plan, which provided that WEA actively endorse the Plan, encourage its members to join, and receive compensation for services it performs in administering it. (*See id.* at ¶¶ 8-9; Sciulara Decl., dkt. no. 15-9 at ¶¶ 2–3.) In light of this context, and because WEA expressly agreed to endorse (and did in fact endorse) the Plan, the safe harbor provision does not apply to exclude it from ERISA coverage. *See* 29 CFR § 2510.3-1(j)(3) (requiring employer or employee organization to not endorse the program); *Stuart*, 217 F.3d at

1   1153 (holding that "a group insurance plan cannot be excluded from ERISA coverage
2   when an employer fails to satisfy any one of the four requirements of the safe harbor
3   regulation"). Thus, the Plan falls within the ambit of ERISA, and does not qualify as a
4   government plan.

5            Accordingly, this Court has federal jurisdiction, and Peterson's Motion to Remand
6   is denied.

7       **B.    Preemption**

8            Defendants seek dismissal of Plaintiff's state law claims based on ERISA
9   preemption. As noted, Plaintiff asserts eight claims which are premised on allegations
10  relating to (1) AFAC's denial of benefits and servicing of Plaintiff's claim for benefits
11  under the Plan and (2) AFAC's alleged misrepresentation and concealment relating to
12  the benefits under the Plan in its marketing and sale of the Plan to induce Plaintiff to
13  enroll and pay higher premiums for increasing benefits and WEA's endorsement of the
14  Plan. Claims 1 through 3 are based on allegations that are covered under the first
15  category: the claim for breach of contract is based on AFAC's breached of the Plan by
16  failing to pay benefits (dkt. no. 1-1 at ¶ 62); breach of the implied covenant of good faith
17  and fair dealing covers allegations relating to denial of benefits under the Plan (*id.* at ¶
18  67); and the claim for breach of Nevada Unfair Claim Practices Act is based on AFAC's
19  denial of benefits and servicing of Plaintiff's claim (*id.* at ¶ 73).  Claims 5 through 8 are
20  based on the second category: the claims for fraud and breach of confidential
21  relationship are based on allegations that AFAC made false representations and
22  concealment relating to the alleged increasing benefits without any limitations or offset of
23  Plaintiff's vesting PERS benefits to induce her to enroll and pay higher premiums (*id.* at
24  ¶¶ 83-84, 94); negligence against AFAC is based on a breach of the duty of care in the
25  marketing and sale of Plan and misrepresentations relating to the benefits under the
26  Plan) (*id.* at ¶ 88); and the claim for negligence against WEA is based on WEA's
27  endorsement of the Policy (*id.* at ¶ 99). Claim 4, breach of deceptive trade practices, is
28  ///

1   based on allegations relating to both categories involving both the sale and marketing of

2   the Plan and servicing and denial of the benefits under the Plan.  (*Id.* at ¶ 78.)

3         ERISA pre-empts all state and common law claims that "'relate[] to' an employee

4   benefit plan governed by ERISA" that have "a connection with or reference to such a

5   plan." *See Providence Health Plan v. McDowell,* 385 F.3d 1168, 1171-72 (9th Cir.2004).

6   "In evaluating whether a common law claim has 'reference to' a plan governed by

7   ERISA, the focus is whether the claim is premised on the existence of an ERISA plan,

8   and whether the existence of the plan is essential to the claim's survival." *Id.* at 1172. "In

9   determining whether a claim has a 'connection with' an employee benefit plan, courts in

10  this circuit use a relationship test" that emphasizes "the genuine impact that the action

11  has on a relationship governed by ERISA, such as the relationship between the plan and

12  a participant." *Id.*; *see also Gen. Am. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521

13  (9th Cir. 1993) ("The key to distinguishing between what ERISA preempts and what it

14  does not lies . . . in recognizing that the statute comprehensively regulates

15  certain relationships: for instance, the relationship between plan and plan member,

16  between plan and employer, between employer and employee[,] . . . and between plan

17  and trustee."). For example, claims brought by a plan member against an ERISA plan

18  administrator are generally preempted where the claims rest on the failure to grant

19  benefits. *See Zavala v. Trans-System, Inc.,* 258 F. App'x 155, 157 (9th Cir. 2007) (*citing*

20  *Bast v. Prudential Ins. Co. of Am.,* 150 F.3d 1003, 1007–08 (9th Cir. 1998); *Spain v.*

21  *Aetna Life Ins. Co.,* 11 F.3d 129, 131–32 (9th Cir. 1993) (per curiam)). However, claims

22  that relate to the relationship between an ERISA plan and a third-party service provider

23  are not preempted. *See Paulsen v. CNF Inc.,* 559 F.3d 1061, 1083 (9th Cir. 2009); *see*

24  *also Castonguay,* 984 F2d at 1522 ("ERISA doesn't purport to regulate those

25  relationships where a plan operates just like any other commercial entity — for instance,

26  the relationship between the plan and its own employees, or the plan and its insurers or

27  creditors, or the plan and the landlords from whom it leases office space.")

28  *///*

Peterson's claims that are based on the first category of allegations relating to the denial of benefits and servicing of the Plan clearly "relate to" the Plan. These claims are based on the existence of the Plan and the benefits allowed under the Plan. Accordingly, these claims (breach of contract, breach of the implied covenant of good faith and fair dealing[3] and breach of Nevada Unfair Claim Practices Act) are preempted under ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41(1987) (holding that ERISA preempts state tort and breach of contract claims by plan participant alleging improper processing of benefit claim).

Peterson's claims that concern the second category of allegations that Defendants engaged in wrongful conduct relating to the marketing and sale of the Plan, are also preempted. *See Farr v. US West, Inc.*, 58 F.3d. 1361, 1366 (9th Cir. 1995) ("[The Ninth Circuit has] held that state law claims challenging fraudulent statements about the nature of a benefits plan itself are preempted by ERISA.") (*citing Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1422-23 (9th Cir. 1991) (claim challenging oral misrepresentation regarding the level of benefits provided by a plan is preempted); *Davidian v. S. Cal. Meat Cutters Union*, 859 F.2d 134, 135 (9th Cir.1988) (claim challenging incorrect description of the insurance benefits of an ERISA plan is preempted)). In support of her claims for fraud, breach of confidential relationship and negligence, Peterson alleges that AFAC concealed material information from her before she enrolled in the Plan and when she signed up for additional coverage during the course of her enrollment. The damages she seeks are to compensate her for benefits she did not receive owing to these misrepresentations and inducements.  Peterson's last

---

[3]In support of this claim, Plaintiff also relies on allegations relating to AFAC's alleged misrepresentations and concealment of benefits under the Plan in order to induce her to pay higher premiums. (Dkt. no. 1-1 at ¶ 67.) However, this claim requires Plaintiff to demonstrate the existence of contract or Plan, the terms of the Plan and whether AFAC contravened with the intention and spirit of the  Plan. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.,* 808 P.2d 919, 922-923 (Nev. 1991); *A.W. Shaw Const., Inc. v. Washoe County*, 784 P.2d 9, 10 (Nev. 1989). This claim is therefore preempted.

five claims (deceptive trade practices, fraud, breach of confidential relationship and two claims for negligence) are therefore preempted.

**V.    CONCLUSION**

It is hereby ordered that Plaintiff's Motion to Remand (dkt. no. 14) is denied.

It is further ordered that Defendants' Motion for Leave to File Excess Pages (dkt. no. 33) is granted.

It is further ordered that Defendants' Motion to Dismiss (dkt. no. 15) is granted. The Complaint is dismissed without prejudice and Plaintiff is granted thirty (30) days to amend the Complaint to assert ERISA claims.

DATED THIS 13th day of November 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE